3 So.3d 206 (2008)
CREDIGY RECEIVABLE, INC.
v.
Stanley B. DAY, Jr.
2070091.
Court of Civil Appeals of Alabama.
August 1, 2008.
*208 Dayna R. Burnett-Wilhoit and Charles N. Parnell III of Parnell & Crum, P.A., Montgomery, for appellant.
Stanley Brooks Day, Jr., pro se.
THOMPSON, Presiding Judge.
On August 28, 2006, Credigy Receivable, Inc. ("Credigy"), sued Stanley B. Day, Jr., in the Baldwin Circuit Court, claiming $8,637 due on an account stated. It appears from the record that Credigy is a successor in interest of First Select, Inc., which had been assigned the credit-card debt allegedly owed by Day to MBNA, N.A. ("MBNA"). On December 6, 2006, Day, acting pro se, filed a response to Credigy's complaint in which he stated:
"At no time have I ever had a credit card with MBNA. I have asked Credigy Receivables for any sort of written proof they might have during phone conversations with them they made attempting to collect, which they did not supply.
"I do not know of any agreement to enter into arbitration or being involved in any such arbitration with Credigy Receivables, Inc.
"I would like to see any evidence they have to support this claim."
The record on appeal contains a letter addressed to Day from the National Arbitration Forum ("NAF") dated August 25, 2005, approximately one year before Credigy filed its August 28, 2006, complaint in the trial court. The letter references "Credigy Receivables, Inc. v. Stanley B. Day, Jr." and cites an NAF file number. It encloses a copy of an arbitrator's award against Day, also dated August 25, 2005, referencing the same case name and NAF file number. It is unclear whether these documents were submitted to the trial court with Credigy's original complaint or with a later filing. The arbitration award states as follows:
"The undersigned Arbitrator in this case FINDS:
"1. That no known conflict of interest exists.
"2. That on or before 06/17/2005 the Parties entered into an agreement providing that this matter shall be resolved through binding arbitration in accordance with the [NAF] Code of Procedure.
"3. That [Credigy] has filed a claim with the [NAF] and served it on [Day] in accordance with Rule 6.
"4. That the matter has proceeded in accord with the applicable [NAF] Code of Procedure.
"5. That the Parties have had the opportunity to present all evidence and information to the Arbitrator.
"6. That the Arbitrator has reviewed all evidence and information submitted in this case.
"7. That the information and evidence submitted supports the issuance of an Award as stated.
"Therefore, the Arbitrator ISSUES:
"An award in favor of [Credigy], for a total amount of $8,088.91."
The award contains a certification that it "was sent by first class mail postage prepaid to the Parties at the ... addresses [referenced in the award]."[1]
*209 With leave of the court, Credigy subsequently amended its complaint. In its amended complaint, Credigy abandoned the account-stated claim and sought to enter a judgment on the arbitration award pursuant to the Alabama Arbitration Act ("the Act"), § 6-6-1 et seq., Ala.Code 1975.[2] Credigy alleged that Day had applied for and was issued a credit card by MBNA and had incurred an $8,088 debt on that card, which he did not pay. According to the amended complaint, the debt was transferred to Credigy and, pursuant to Day's original contract with MBNA, the dispute was submitted to arbitration through the NAF. Credigy alleged that it had obtained an arbitration award against Day and that Day had not satisfied the award. Credigy requested that the arbitration award be given the force and effect of a judgment against Day. See §§ 6-6-2 and 6-6-12, Ala.Code 1975.
Based on Day's assertion that he had never had a credit card with MBNA, the trial court ordered Credigy to produce a credit-card application between Day and MBNA. On September 24, 2007, the trial court conducted a hearing. Credigy did not produce a credit-card application at the hearing as the trial court had ordered. Day, acting pro se, represented to the trial court that he had never had an MBNA credit card. He contended that unless Credigy could produce an agreement to arbitrate, he was not obligated to participate in the arbitration proceeding; in so arguing, Day apparently contended that he could not be bound by the arbitration award because he did not participate in the arbitration proceeding. Credigy, through its counsel, responded by stating that Day was given opportunities to participate in the arbitration proceeding, that he did not do so, and that, pursuant to the Act, the arbitration award was to be treated as a judgment.
After being duly sworn, Day testified that he had received letters from the NAF. He stated:
"DAY: I don't recall receiving four [letters]. I mean, I've seen things from the National Arbitration Forum. I received one thing from the National Arbitration Forum saying that all arbitration awards granted during a certain time frame after Hurricane Ivan had been null and void.
"CREDIGY'S COUNSEL: That's correct. And after that, did you receive one where the proceedings had been reinstated after the stay from Hurricane Katrina?
"DAY: I don't know if I did or not.
"CREDIGY'S COUNSEL: So you received the one vacating a previous award, but you didn't receive the subsequent notices to you?
"DAY: I received [a letter] stating that the award had been granted.
"CREDIGY's COUNSEL: And did you file anything in response with the [NAF] to dispute ever having an MBNA credit card?
"DAY: No."
The trial court entered an order on September 26, 2007, stating: "Plaintiff and defendant appeared. Defendant has sworn in open court that he has never had a MBNA credit card. The plaintiff has failed to produce a MBNA credit card application as ordered by this court on 7-23-2007. Case dismissed." Credigy filed *210 a notice of appeal to this court on October 26, 2007.
On appeal, Credigy argues that the trial court erred by failing to enter the arbitration award as a judgment pursuant to § 6-6-2. Credigy further argues that the award cannot be inquired into or impeached because Day did not follow the correct procedures for an appeal of the award set forth in § 6-6-15, Ala.Code 1975.
The Act establishes the procedures by which disputes may be submitted to arbitration and by which arbitration awards are entered in Alabama. Section 6-6-2 provides:
"When no action is pending, the parties to any controversy may refer the determination thereof to the decision of arbitrators to be chosen by themselves, and the award made pursuant to the provisions of this division must be entered up as the judgment of the proper court if the award is not performed."
(Emphasis added.) Once a dispute has been submitted to arbitration and an award made thereon, as is the circumstance in this case, the Act provides that the award will have the effect of a judgment.
"If the award is not performed in 10 days after notice and delivery of a copy thereof, the successful party may, ... if no action is pending, cause the submission and award to be returned to the clerk of the circuit court of the county in which the award is made. Such award has the force and effect of a judgment, upon which execution may issue as in other cases."
§ 6-6-12, Ala.Code 1975.
In reviewing the record on appeal, we cannot find that the trial court or its clerk ever entered the arbitration award as the judgment of the trial court pursuant to §§ 6-6-2 and 6-6-12. "[W]e must give the words in a statute their plain, ordinary, and commonly understood meaning, and where plain language is used we must interpret it to mean exactly what it says." Bean Dredging, L.L.C. v. Alabama Dep't of Revenue, 855 So.2d 513, 517 (Ala.2003). Section 6-6-2 states that arbitration awards made pursuant to the Act "must be entered up as the judgment of the proper court if the award is not performed." (Emphasis added.) "The word `must' is clear and unambiguous and is imperative and mandatory." Ex parte Prudential Ins. Co. of America, 721 So.2d 1135, 1138 (Ala.1998). Accordingly, the trial court erred in not entering the arbitration award as its judgment pursuant to § 6-6-2. We reverse the trial court's order dismissing the action and remand the action so that the trial court, or its clerk, see § 6-6-15, Ala.Code 1975, Horton Homes, Inc. v. Shaner, 999 So.2d 462, 464 (Ala.2008), may enter the arbitration award as the judgment of the trial court pursuant to § 6-6-2.
In his dissent, Judge Moore argues that, pursuant to § 6-6-2, the award may only be entered after the trial court determines that the parties entered an arbitration agreement.[3] Under Judge Moore's *211 interpretation of § 6-6-2, a circuit court has the authority to inquire into underlying questions regarding the existence of the arbitration agreement and the circumstances of the arbitration, even when the party challenging the award has not complied with the appeal procedures established elsewhere in the Act. See §§ 6-6-14 and 6-6-15, Ala.Code 1975. The Act is not a model of clarity. See, e.g., Jenks v. Harris, 990 So.2d 878, 882 (Ala.2008). However, we believe that reading § 6-6-2 as Judge Moore proposes would infringe on the requirements of §§ 6-6-14 and 6-6-15, discussed below, and place a burden on the party seeking to enforce the award that the Act did not clearly intend.
This decision should not be read to imply that a party may not challenge the existence of an agreement to arbitrate or the propriety of the arbitration in procedural circumstances such as this, where the arbitration award has already been issued and a party is seeking enforcement of that award. On remand, the procedures established by §§ 6-6-14 and 6-6-15 will apply to the trial court's consideration of Day's arguments regarding the existence and enforceability of the arbitration agreement. Section 6-6-14, Ala.Code 1975, establishes specific grounds upon which an arbitration award may be set aside by a circuit court:
"An award made substantially in compliance with the provisions of this division is conclusive between the parties thereto and their privies as to the matter submitted and cannot be inquired into or impeached for want of form or for irregularity if the award determines the matter or controversy submitted, and such award is final, unless the arbitrators are guilty of fraud, partiality, or corruption in making it."
Section 6-6-14 provides that only an award "made substantially in compliance with the provisions of this division" is conclusive between the parties. Although not explicit, this language implies that a party may challenge an arbitration award on the ground that it was not made in compliance with the requirements of the Act, i.e., that the parties did not agree to submit their dispute to arbitration.
Section 6-6-15, Ala.Code 1975, establishes the procedures for appealing from an arbitration award on the grounds set forth in § 6-6-14. That section provides:
"Either party may appeal from an award under this division. Notice of the appeal to the appropriate appellate court shall be filed within 10 days after receipt of notice of the award and shall be filed with the clerk or register of the circuit court where the action is pending or, if no action is pending, then in the office of the clerk or register of the circuit court of the county where the award is made. The notice of appeal, together with a copy of the award, signed by the arbitrators or a majority of them, shall be delivered with the file of papers or with the submission, as the case may be, to the court to which the award is returnable; and the clerk or register shall enter the award as the judgement of the court. Thereafter, unless within 10 days the court shall set aside the award for one *212 or more of the causes specified in Section 6-6-14, the judgment shall become final and an appeal shall lie as in other cases. In the event the award shall be set aside, such action shall be a final judgement from which an appeal shall lie as in other cases."
In an extensive discussion of § 6-6-15, our supreme court recently noted that "`the procedure for obtaining jurisdiction to review an arbitration award under § 6-6-15, Ala.Code 1975, is far from clear.' Jenks v. Harris, 990 So.2d 878, 882 (Ala. 2008)." Horton Homes, 999 So.2d at 464. The supreme court then clarified "the role of the circuit court in reviewing an arbitration award" and revised the procedures established by § 6-6-15. See Horton Homes, 999 So.2d at 464.
Under the procedures established in Horton Homes, a party seeking judicial review of an arbitration award must file a notice of appeal from that award within 42 days from the date the party received notice of the award. 999 So.2d at 464. Thereafter, once the clerk of the circuit court enters a judgment on the award pursuant to § 6-6-2, that judgment is conditional and may be set aside by the circuit court based on the grounds stated in § 6-6-14 if the party challenging the award has filed a motion to vacate.
Our supreme court has explained the procedures pursuant to which a judgment on an arbitration award may be set aside, stating as follows:
"The judgment entered by the circuit clerk on the arbitrator's award pursuant to § 6-6-15 is a conditional one; it does not become a final appealable judgment until the circuit court has had an opportunity to consider a motion to vacate filed by a party seeking review of the arbitration award. A party seeking review of an arbitration award is required to file a motion to vacate during this period  while the judgment entered by the circuit clerk remains conditional...."
Horton Homes, 999 So.2d at 467. The party challenging the arbitration award must file the motion to vacate "within 30 days of filing the notice of appeal of the arbitration award and the clerk's entry of the conditional judgment based thereon" in order to "invoke the circuit court's authority to set aside the [conditional] judgment" on the arbitration award. Id. If the party wishing to challenge the arbitration award does not file a motion to vacate within that time, the circuit court's judgment based on the arbitration award becomes final. Id.
If the party files a timely motion to vacate, "the circuit court shall then have 90 days, unless that time is extended by the consent of all the parties, to dispose of the motion." Id.
"If the circuit court grants the motion to vacate during this 90-day period, then the nonmovant has 42 days from the order granting the motion in which to file in the circuit court a notice of appeal of the court's judgment. If the circuit court denies the motion to vacate within 90 days or allows the motion to be denied by inaction after 90 days, then the conditional judgment entered by the circuit clerk becomes final, and the appeal [of the party challenging the award] is processed based on the prior notice of appeal."
Id.
In accordance with the rules established in Horton Homes, supra, the judgment to be entered by the trial court or its clerk pursuant to §§ 6-6-2 and 6-6-12 in accordance with this decision shall be conditional when it is entered. Because the procedures for filing a notice of appeal from an arbitration award under § 6-6-15 were unclear before the supreme court issued *213 its decision in Horton Homes, see 999 So.2d at 468, Day shall have 30 days from the date of this decision to file a notice of appeal from the arbitration award and a motion with the trial court to vacate the award. If Day chooses not to file a notice of appeal and a motion to vacate, the trial court's judgment on the arbitration award, entered in accordance with §§ 6-6-2 and 6-6-12, shall become final. If Day chooses to file a notice of appeal and a motion to vacate the award, he may argue, as he did before, that he never agreed to arbitrate a dispute with Credigy or its predecessors. See § 6-6-14, Ala.Code 1975 ("An award made substantially in compliance with the provisions of this division is conclusive between the parties thereto and their privies as to the matter submitted and cannot be inquired into or impeached for want of form or for irregularity if the award determines the matter or controversy submitted, and such award is final, unless the arbitrators are guilty of fraud, partiality, or corruption in making it." (emphasis added)). If Day chooses to file a notice of appeal and a motion to vacate, the trial court will then have 90 days to issue a decision on the motion and Credigy's response, as outlined in § 6-6-15 and Horton Homes, supra. Thereafter, the parties and the trial court shall proceed according to the procedures set forth in § 6-6-15 and Horton Homes, supra.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in part and dissents in part, with writing.
MOORE, J., dissents, with writing.
BRYAN, Judge, concurring in part and dissenting in part.
I agree that the trial court's judgment should be reversed and the case remanded for the trial court or its clerk to enter the arbitration award as the trial court's judgment pursuant to §§ 6-6-2 and -12, Ala. Code 1975. However, I disagree with the main opinion's conclusion to permit Day 30 days from the date of this court's decision in which to file an appeal from the arbitration award. Because Day did not file an appeal from the arbitration award within 42 days from the date he received notice of that award, any appeal from that award would be untimely. Horton Homes, Inc. v. Shaner, 999 So.2d 462 (Ala.2008). I agree that the period for filing an appeal from an arbitration award was unclear before our supreme court's decision in Horton Homes. However, that uncertainty should not serve as an excuse for Day, who never filed an appeal from the arbitration award. I believe that Day may still be afforded relief in the trial court, however. I read nothing in Horton Homes that would prevent Day, on remand, from filing a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the judgment of the trial court confirming the arbitration award.
In all other respects, I concur in the main opinion.
MOORE, Judge, dissenting.
I respectfully dissent from the majority's reversal of the trial court's judgment in this case.
The scant record in this case reveals the following: On August 28, 2006, Credigy Receivable, Inc. ("Credigy"), filed a complaint against Stanley B. Day, Jr. ("Day"), seeking to recover money due to nonpayment of a credit-card debt allegedly owed to MBNA, N.A. ("MBNA"), which had been assigned to Credigy. On December 5, 2006, Day answered, denying that he had ever been issued an MBNA credit card and demanding proof thereof; he also demanded proof of any arbitration agreement *214 he had allegedly entered into with Credigy. On February 21, 2007, Credigy filed a motion to amend its complaint to seek the entry of a judgment on an arbitration award that had been rendered on August 25, 2005; that motion was granted. In the amended complaint, Credigy alleged that it had submitted the dispute over the credit-card debt to arbitration by the National Arbitration Forum ("NAF") in accordance with the original contract between Day and MBNA, that Day had been notified of the arbitration proceedings, that an NAF arbitrator had rendered an award of $8,088.91 against Day, and that Day had failed to satisfy that award within 10 days.
In the amended complaint, Credigy cited Ala.Code 1975, § 6-6-12, a part of the Alabama Arbitration Act, Ala.Code 1975, § 6-6-1 et seq., which provides:
"If the award is not performed in 10 days after notice and delivery of a copy thereof, the successful party may, if an action is pending, cause the award and the file of papers in the case to be returned to the court in which the action is pending or if no action is pending, cause the submission and award to be returned to the clerk of the circuit court of the county in which the award is made. Such award has the force and effect of a judgment, upon which execution may issue as in other cases."
As long ago construed by our supreme court, this statute does not contemplate that a circuit court will actually enter a judgment on the arbitration award but, rather, that it will merely take notice of the award and give it the force and effect of a judgment. Moss v. Upchurch, 278 Ala. 615, 618, 179 So.2d 741, 744 (1965) (citing Wilbourn v. Hurt, 139 Ala. 557, 563-64, 36 So. 768, 770 (1904)). To avoid enforcement, the party opposing the arbitration award must file a notice of appeal of the arbitration award, at which point the clerk of the circuit court shall enter the award as the judgment of the court. See Ala.Code 1975, § 6-6-15. The judgment may be set aside only for the reasons set out in Ala.Code 1975, § 6-6-14, which provides, in pertinent part:
"An award made substantially in compliance with the provisions of this division is conclusive between the parties thereto and their privies as to the matter submitted and cannot be inquired into or impeached for want of form or for irregularity if the award determines the matter or controversy submitted, and such award is final, unless the arbitrators are guilty of fraud, partiality, or corruption in making it."
Had Credigy relied exclusively on § 6-6-12 in its amended complaint, it is apparent that the trial court could not have inquired into the existence of an arbitration agreement because Day had failed to file a notice of appeal of the arbitration award and the statutory procedure dictates that the trial court may only consider objections to the arbitration award during the appeal process.
However, in addition to citing § 6-6-12, Credigy also requested the court to "enter a judgment against [Day]" based on the arbitration award. Credigy further asserted that it was "seeking an entry of an arbitration award as a judgment upon which execution can issue." "The relief sought within the pleading governs, and the nomenclature of the pleading is not controlling." Garris v. Garris, 643 So.2d 993, 995 (Ala.Civ.App.1994). By requesting entry of a judgment, Credigy clearly invoked Ala.Code 1975, § 6-6-2, which it also cited in its amended complaint and which provides:
"When no action is pending, the parties to any controversy may refer the determination thereof to the decision of *215 arbitrators to be chosen by themselves, and the award made pursuant to the provisions of this division must be entered up as the judgment of the proper court if the award is not performed."
In Gandy v. Tippett, 155 Ala. 296, 46 So. 463 (1908), superseded by statute on other grounds, McDuffie v. Faulk, 107 So. 61, 63, 214 Ala. 221, 224 (1926), our supreme court held that the predecessor to § 6-6-2 requires "the clerical act of filing said submission and award and entering the same up as the judgment of the court." 155 Ala. at 298, 46 So. at 463.
Based on my review of applicable caselaw, we are confronted with a question of first impression as to whether the language of § 6-6-2 authorizes a circuit court to inquire into the existence of an arbitration agreement before performing its clerical task of entering a judgment affirming the arbitration award. I believe it does.
As I read § 6-6-2, a circuit court must enter an arbitration award as its judgment only if the award is not performed and only if "the award [is] made pursuant to the provisions of this division". An award is "made pursuant to the provisions of this division" if, among other things, it is rendered by an arbitrator "chosen" by "the parties to any controversy." Therefore, § 6-6-2 basically provides that a circuit court must enter an unperformed arbitration award as its judgment if that award has been rendered by an arbitrator chosen by the parties involved in a dispute. Consequently, by necessary implication, a circuit court may not enter an unperformed arbitration award as its judgment if that award has been rendered by an arbitrator who has not been chosen by all the parties.
Reading § 6-6-2 as described above, a circuit court acting on a petition to enter an arbitration award should decide whether the parties agreed on the arbitrator before entering the award rendered by that arbitrator as its judgment. Obviously, if a circuit court is required to enter an arbitration award rendered by an arbitrator selected by all the parties, it must make an initial determination as to the existence of such an agreement before entering the award under § 6-6-2. If it determines that the parties entered into an arbitration agreement designating the arbitrator as the person to resolve their dispute, and all other conditions set out in the "division" are established, then, pursuant to § 6-6-2, the circuit court must enter as its judgment the unperformed award. On the other hand, if the circuit court finds that the parties did not enter into an arbitration agreement designating the arbitrator as the person to resolve their dispute, then, pursuant to § 6-6-2, the circuit court may not enter the award of that arbitrator as its judgment.
In the present case, there was no evidence offered to the trial court that both parties had agreed to submit their controversy to arbitration.[4] Day testified that he had never possessed an MBNA credit card and further denied having ever filled out an application for an MBNA credit card. Credigy did not produce a credit-card application between Day and MBNA in response to the trial court's order to do so; *216 nor did Credigy produce any admissible evidence indicating that Day had agreed to arbitrate any claims relating to debt Day accumulated on an MBNA credit card. Consequently, the trial court correctly found that the parties had not chosen an arbitrator to decide their dispute and that the arbitration award was not "made pursuant to the provisions of this division."
I agree with the main opinion that by stating that only those arbitration awards "made substantially in compliance with the provisions of this division" are conclusive, § 6-6-14 authorizes a circuit court also to set aside a judgment affirming an arbitration award that is not based on an agreement of all the parties to arbitrate. 3 So.3d at 211. Assuming a party properly follows the appeal procedures set out § 6-6-15 and Horton Homes, Inc. v. Shaner, 999 So.2d 462 (Ala.2008), a circuit court can, after the entry of a judgment affirming an arbitration award, make a determination as to the existence of an arbitration agreement and decide whether it erred in entering the judgment affirming the arbitration award. However, the same language in § 6-6-14 upon which the main opinion relies for this power is also contained in § 6-6-2, which bestows upon a circuit court the authority to make a determination as to whether an arbitration agreement exists before entry of the judgment. Therefore, I cannot agree with the main opinion that the statutory framework makes the appeals process the exclusive method for determining whether an arbitration agreement exists.
In short, I believe the operative statutes give a circuit court authority to determine the existence of an arbitration agreement both before and after the entry of a judgment affirming the arbitration award. The first inquiry is made to determine whether judgment should be entered on the award, while the latter concerns whether the judgment should be set aside. In this case, the trial court did not commit reversible error by deciding the issue before entering a judgment affirming the arbitration award. Because the trial court acted in accordance with § 6-6-2, and because the evidence supports the trial court's determination, I believe it properly dismissed the amended complaint requesting the entry of a judgment affirming the arbitration award. For the foregoing reasons, I would affirm the judgment of the trial court.
NOTES
[1] The street number listed for Day on the award does not match the street number Day stated was his during testimony before the trial court; however it does match the street number on the return address Day listed in his response to Credigy's complaint. Furthermore, because Day later admitted receiving a copy of the award, this anomaly is immaterial.
[2] There is no allegation in this case that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., applies in this case. Accordingly, we analyze this case only under the Alabama Arbitration Act.
[3] In a footnote in his dissent, Judge Moore cites Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050 (Ala.2007); J.C. Bradford & Co. v. Vick, 837 So.2d 271, 273 (Ala. 2002); and Shearson Lehman Bros. v. Crisp, 646 So.2d 613, 618 (Ala.1994) for the proposition that "the question whether an arbitration agreement exists is to be decided by a court rather than an arbitrator." 3 So.3d at 215 n. 4. In each of those cases, our supreme court reviewed the trial court's ruling on a motion to compel arbitration filed after an action had been initiated in the trial court and before arbitration had occurred. In that particular context, it is settled law that, under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., the "party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that that contract evidences a transaction involving interstate commerce." Edwards, 973 So.2d at 1052 (emphasis added). It is within that context that our courts have stated that the determination whether a contract exists is for the courts. See Edwards, Vick, and Crisp, supra. This case involves an arbitration award, not a motion to compel arbitration. Our research has not found any authority to support Judge Moore's argument that the requirements placed on a party seeking to compel arbitration also apply to a party who seeks to enforce an arbitration award.
[4] The arbitration award indicates that the arbitrator found that the parties did agree to arbitrate; however, the question whether an arbitration agreement exists is to be decided by a court rather than an arbitrator. Title Max of Birmingham, Inc. v. Edwards, 973 So.2d 1050 (Ala.2007); J.C. Bradford & Co. v. Vick, 837 So.2d 271, 273 (Ala.2002); and Shearson Lehman Bros. v. Crisp, 646 So.2d 613, 618 (Ala. 1994). The main opinion agrees that the trial court has the duty of deciding the existence of an arbitration agreement. Our dispute merely touches on the point at which that determination may be made.